UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

| | |
|---|---|
| **APRIL R. SMITH,** | **CIVIL ACTION NO. 6:14-87-KKC** |
| **Plaintiff,** | |
| V. | **MEMORANDUM OPINION AND ORDER** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment. (DE 12; DE 15). Plaintiff April R. Smith brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial relief of an administrative decision of the Commissioner of Social Security denying her claim for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court, having reviewed the record, will affirm the Commissioner's decision as it is supported by substantial evidence and was decided by the proper legal standards.

## I. OVERVIEW OF THE PROCESS

The Social Security Act and corresponding regulations provide a five-step sequential process for determining whether a claimant has a compensable disability. 20 C.F.R. § 404.1520(a)(4); *see also Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009) (describing the administrative process). The five steps, in summary, are as follows:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

> 2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers*, 582 F.3d at 652 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 404.1520(b)–(g)). If, at any step in the process, the administrative law judge ("ALJ") concludes that the claimant is or is not disabled, then the ALJ can complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proof through the first four steps of the analysis; and, at step five, the burden shifts to the Commissioner. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). The claimant must, in order to satisfy his burden of proof, provide sufficient facts to find in his favor. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010).

## II. PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

Smith filed her claim for DIB and SSI on November 9, 2010, alleging an onset date of July 17, 2009. (Tr. at 179, 190.) The agency denied her application initially and on reconsideration. (Tr. at 75, 88, 102, 114.) Smith requested review by an ALJ, and the ALJ

2

held a hearing on July 18, 2012. (Tr. at 25–63.) The ALJ subsequently issued an unfavorable decision on October 23, 2012. (Tr. at 11–19.)

At the time the ALJ rendered his decision, Smith was thirty-one years old. She has completed her GED and has specialized training as a "para educator." (Tr. at 239–40.) Smith previously worked as a cashier, a housekeeper, a nurse's aide, and temporary worker at a paint warehouse. (Tr. at 31, 240.) She alleges disability due to a back condition and degenerative disc disease. (Tr. at 64, 77.) Smith's insured status expired on June 30, 2014. (Tr. at 13.)

At the first step, the ALJ determined that Smith has not engaged in substantial gainful activity since her alleged onset date of July 17, 2009. (Tr. at 13.) At the second step, the ALJ found that Smith suffers from the following severe impairments: "chronic low back pain secondary to degenerative disc disease of the lumbar spine with a right disc protrusion at the L5/S1 level, status post L4/L5 discectomy; and mild obesity." (Tr. at 13.) At the third step, the ALJ concluded that Smith does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. at 14–16.)

Next, the ALJ reviewed the record to determine Smith's residual functional capacity ("RFC"). RFC assesses a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In finding Smith's RFC, the ALJ considered all symptoms in light of the objective medical evidence and other relevant evidence, including the following: (1) daily activities; (2) location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) additional treatment; (6) additional measures used to

relieve symptoms; and (7) other factors concerning functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p, 1996 WL 374187 (July 2, 1996); SSR 96-7p, 1996 WL 374186 (July 2, 1996). The ALJ also considered the relationship between Smith and the doctors providing medical opinions; the supportability and consistency of the medical opinions with the entire record evidence; medical specialization; and other opinion evidence. 20 C.F.R. §§ 404.1527, 416.927; SSR 06-3p, 2006 WL 2329939 (Aug. 9, 2006); SSR 96-2p, 1996 WL 374188 (July 2, 1996); SSR 96-5p, 1996 WL 374183 (July 2, 1996); SSR 96-6p, 1996 WL 374180 (July 2, 1996).

After reviewing all the record evidence, the ALJ determined that Smith has the RFC to perform sedentary work—work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 CFR §§ 404.1567(a), 416.967(a). The ALJ also noted that Smith should adhere to the following limitations: "she requires a sit/stand option with no prolonged sitting, standing or walking in excess of 45 minutes to one hour without interruption" and numerous limitations related to mobility and exposure. (Tr. at 16.)

The ALJ continued to the fourth step. The ALJ asked the vocational expert ("VE") whether a hypothetical individual with Smith's education, experience, and RFC—explicitly including the sit/stand requirement—could perform any of Smith's previous jobs. (Tr. at 57–58.) The VE testified that this hypothetical individual could not perform Smith's past work. (Tr. at 58.) The ALJ moved to the fifth step and asked if this hypothetical individual could perform other jobs available in the regional or national economy, and the VE stated that this hypothetical individual could perform the following jobs: surveillance monitor and dispatcher. (Tr. at 58.) Therefore, the ALJ found Smith not disabled. (Tr. at 19.)

The ALJ's decision that Smith was not disabled from July 17, 2009 through October 23, 2012 became the final decision of the Commissioner when the Appeals Commission subsequently denied Smith's request for review on February 24, 2014. (Tr. at 1–6.) Smith has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

### III. GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be affirmed unless the ALJ applied the incorrect legal standards or the ALJ's findings are not supported by substantial evidence. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In reviewing the decision of the Commissioner, courts should not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Lindsley*, 560 F.3d at 604–05. Courts must look at the record as a whole, and "[t]he court 'may not focus and base [its] decision entirely on a single piece of evidence, and disregard other pertinent evidence.'" *Sias v. Sec. of H.H.S.*, 861 F.2d 475, 479 n.1 (6th Cir. 1988) (alteration in original) (quoting *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978)). Rather, courts must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court may have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

### IV. ANALYSIS

Smith presents two issues for review. First, she argues that the ALJ erred in analyzing her disability under the Listed Impairments. Second, Smith asserts that the ALJ failed to afford the appropriate weight to her treating physician's medical opinion.

5

> *1. The ALJ did not err in analyzing Smith's disability under the Listed Impairments.*

At the third step in the disability evaluation process, the ALJ must determine whether a claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P ("Listed Impairments"). *Rabbers*, 582 F.3d at 652; 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). The Listed Impairments describes impairments that the Commission considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 404.1525(a). Therefore, if a claimant meets or equals one of the listings, the claimant "will be deemed conclusively disabled[] and entitled to benefits." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011).

In determining whether a claimant's impairments meets or equals one of the Listed Impairments, the ALJ must evaluate the entire medical record, consider the combined effect of the claimant's impairments, and compare the medical evidence with the requirements for listed impairments. *See Reynolds*, 424 F. App'x at 415; *Lankford v. Sullivan*, 942 F.2d 301, 306 (6th Cir. 1991). "An impairment or combination of impairments will be deemed medically equivalent to a listed impairment if the symptoms, signs and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairments most like the claimed impairment." *Dorton v. Heckler*, 789 F.2d 363, 366 (6th Cir. 1986); 20 C.F.R. § 404.1526(b). But "[i]t is insufficient that a claimant comes close to meeting the requirements of a listed impairment." *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).

Here, the ALJ found physical impairments at Step Two; however, he determined at Step Three that Smith did not have an impairment or combination of impairments that met

6

or medically equaled one of the listed impairments. (Tr. at 13–14.) The ALJ then discussed the evidence offered in support of Smith's claim and explained how he reached the conclusion that Smith's symptoms are insufficient to meet or medically equal any listed impairment. (*See* Tr. at 14–16); *see also Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (noting the requirement that an ALJ properly explain his or her findings at Step Three).

Specifically, the ALJ detailed Smith's history of musculoskeletal symptoms and treatment. (Tr. at 14–15.) Smith had surgery in July 2009 to excise a "herniated intervertebral disc" (Tr. at 276) but, by December 2009, was able to walk with a normal gait and station (Tr. at 389). The ALJ then identified that Smith's condition deteriorated again and that Smith began seeing Dr. Dubal, a pain specialist, in May 2010. (Tr. at 14, 446–52.) Upon examination, Dr. Dubal also found that Smith walked with a normal gait and station. (Tr. at 447.) And the ALJ discussed the medical records provided by Dr. Brooks. (Tr. at 14, 499–528, 543–44.) The ALJ noted that Dr. Brooks ultimately concluded that Smith "would find it difficult to work in a setting that would not allow her to change position and/or recline on an as needed basis" (Tr. at 544) and that Dr. Brooks found that "[n]othing seems to have helped" (Tr. at 543). Finally, the ALJ stated that he evaluated combined effects of the "musculoskeletal, respiratory, cardiovascular or any other body system impairments." (Tr. at 15.)

After analyzing Smith's entire medical record, the ALJ stated that he "carefully considered whether claimant might meet Section 1.00" but that "the claimant is not impaired by an extreme limitation of the ability to ambulate effectively." (Tr. at 15.) The inability to ambulate effectively is a prerequisite for finding that a claimant meets any Listed Impairment of the musculoskeletal system. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(a). "Inability to ambulate effective means an *extreme* limitation of the ability to

7

walk." *Id.*§ 1.00(B)(2)(b)(1) (emphasis added). Although Smith had a positive straight-leg test, the ALJ observed that Smith "is able to sustain a reasonable walking pace sufficient to carry out activities of daily living, including traveling without the need for companion assistance." (Tr. at 15.) Smith's ability to ambulate effectively is supported by substantial evidence because Smith's examinations consistently find that she has a normal, or at least ambulating, gait. (*See* Tr. at 389, 447, 481, 509, 514, 516–17, 523, 530, 538, 541, 546, 550–51, 556, 559, 562, 565, 569, 572, 575, 578, 580, 585, 595, 600, 602, 614, 622, 629, 649.)

Accordingly, the ALJ's conclusion that Smith's impairments do not meet or medically equal a Listed Impairment is supported by substantial evidence and applied the correct legal standards. *See Lindsley*, 560 F.3d at 604.

   *2. The ALJ did not err in evaluating Dr. Brooks' medical opinion.*

The ALJ is required to "evaluate every medical opinion" in the record. *See* 20 C.F.R. § 404.1527(d). But not all medical opinions are treated equally. Treating-source opinions, opinions from a medical source who regularly treats the claimant, "must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (alteration in original) (citing 20 C.F.R. § 404.1527(c)(2)).

Further, every medical opinion is evaluated for supportability and consistency. 20 C.F.R. § 404.1527(c). The ALJ will give more weight to medical opinions that provide more thorough supporting explanations and that are more consistent with the record as a whole. *Id.* Importantly, the ALJ must evaluate the record as a whole in connection with "other

sources" including testimonial and anecdotal evidence. *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397–98 (6th Cir. 2014) (citing 20 C.F.R. § 404.1513).

Smith alleges that the ALJ "disregarded the opinion of plaintiff's treating physician, Dr. Brooks." (DE 12-1, Mem. in Supp. of Pl.'s Mot. for Summ. J., at 10.) The ALJ, however, explicitly discussed Dr. Brooks' medical opinion, and the ALJ used Dr. Brooks' medical opinion to determine whether Smith had an impairment that met or medically equaled a Listed Impairment and to establish Smith's RFC. (Tr. at 14, 17.) Smith asserts that Dr. Brooks opined that she could not perform sedentary work; however, Smith exaggerates Dr. Brooks' opinions.

On February 27, 2012, Dr. Brooks stated that he thought that Smith "would find it difficult to work in a setting that would not allow her to change position and/or recline on an as needed basis." (Tr. at 544.) Dr. Brooks did not state that Smith *cannot* work. In fact, Dr. Brooks repeatedly found that Smith, despite having a positive straight-leg test, was in relatively good health. *See, e.g.*, (Tr. at 506) ("Aprill was seen in follow up and is actually doing quite well."); (Tr. at 509) ("She ambulates with a steady gait."); (Tr. at 513–14) ("She has done well post-operatively and on last visit of October she was to come back and see us in two months, however, she failed to return. . . . She has been doing her housework and cleaning houses. . . . Station and gait are within normal limits."); (Tr. at 516) ("She does fairly well with her walking, exercises, and activities of daily living. . . . We will increase her lifting capacity for work to 20 pounds."); (Tr. at 517) ("Station and gait are within normal limits.").

Additionally, the ALJ incorporated Dr. Brooks' recommended limitations into Smith's RFC. (Tr. at 16–17, 544.) Smith's RFC includes a "required sit/stand option with no prolonged sitting, standing or walking in excess of 45 minutes to one hour without

9

interruption" because the ALJ "accommodate[d] Dr. Brooks' limitations set forth at 2/27/2012, exhibit 8F, with the sedentary level of work and the sit-stand option." (Tr. at 16–17.) Therefore, the ALJ gave great weight to Dr. Brooks' medical opinion and also evaluated Dr. Brooks' treatment record for supportability and consistency. The ALJ's treatment of Dr. Brooks' medical opinion evidence is supported by substantial evidence and applies the correct legal standards. *See Lindsley*, 560 F.3d at 604.

## V. CONCLUSION

For the reasons set forth above, the Court hereby **ORDERS** as follows:

1. Plaintiff's motion for summary judgment (DE 12) is **DENIED**;

2. The Commissioner's motion for summary judgment (DE 15) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously.

Dated February 5, 2015.

*Karen K. Caldwell*
KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY